SOUTHWESTERN TELEGRAPH & TELEPHONE COMPANY v. C. S. SOLOMON ET AL.

Decided March 4, 1909.

**Telephone—Summoning Physician—Injuries by Death—Contract—Proximate Result.**

A subscriber to a telephone, by reason of the imperfect service furnished, failed to obtain the attendance of a physician to his wife in child-birth, and she died in consequence. Held, that the injury was not a proximate result of the breach of the general contract to maintain telephone service for the subscriber, such as could have been contemplated by the parties when it was made, and a demurrer to a petition seeking to recover damages for the wife's death should have been sustained.

Appeal from the District Court of Harrison County. Tried below before Hon. W. C. Buford.

A. P. *Wozencraft* and D. A. *Frank,* for appellant.—In Texas, in a suit to recover damages for the death of any person, it must appear that death resulted from some injury to the person of deceased, and it can not be maintained where death is the indirect result of a breach of contract. Rev. Stats., art. 3017; Lipscomb v. Railway Co., 95

Texas, 16; Turner v. Cross, 83 Texas, 218; Tiffany, Death by Wrongful Act, secs. 63, 65, 76; Williams v. Traction Co., 107 S. W., 125.

In a suit for damages, for breach of contract, the damages claimed must flow as the natural result of the breach, or must have been in contemplation when the contract was made. Rev. Stats., art. 3017; Jones v. George, 61 Texas, 353; Express Co. v. Darnell, 62 Texas, 639; Seale v. Railway Co., 65 Texas, 274; Telephone Co. v. Linn, 87 Texas, 7; Cooley on Torts, 75.

*T. P. Young* and *Harrison & Davidson,* for appellees.—The court did not err in overruling the demurrers to plaintiff's petition, because the petition charges that it was the duty of the defendant company to keep its phones and wires in such condition that subscribers can use the phone in any case of emergency, and this is the duty that the company owes to its patrons, and can not be delegated to its servants, and the failure to keep the phones and wires in condition for use is negligence of the company for which it is liable. Rev. Stats., arts. 3017, 3018; Thompson v. Ft. Worth & R. G. Ry. Co., 97 Texas, 590.

LEVY, Associate Justice.—The suit is by C. S. Solomon, Sr., and his minor children for damages alleged to have been sustained through the negligence of the appellant company which resulted in the death of Mrs. Solomon, the wife and mother.

By the petition it is claimed that appellant operated a system of telephones in Marshall, Texas, and that on July 17, 1901, C. S. Solomon, Sr., plaintiff, had a telephone instrument installed in the house of Mrs. Godbold, his mother-in-law, and that he had a contract with the defendant company to maintain said instrument in said house for the purpose of plaintiff's communicating with other subscribers, and that plaintiff paid a part of the monthly rental for such service; that defendant agreed to furnish telephone connection with all of the other subscribers to the system in Marshall, and among whom were about twenty physicians; that appellant had obligated itself to properly construct, equip, maintain and keep in repair the said telephone; that on the night of February 5, 1906, the wife of C. S. Solomon and mother of the plaintiffs was taken ill with childbirth, and it became necessary to have a physician to give her medical and surgical attention, and that C. S. Solomon, Sr., about 2 a. m. on said date, went to the said telephone and rang the central office for the purpose of getting connection with Dr. Rosborough, who was plaintiff's family physician, and who also had in his residence a telephone and was connected with the system as a subscriber; "that the instruments, batteries, circuits of electricity, and wires were so out of order, unsuitable and unfit for the purpose for which they were intended, that the said plaintiff could not secure any telephonic connection with the central office of the system, the wires were not properly insulated or stretched and ran through tree tops and bushes, and were in contact with other objects, not insulators, and was grounded improperly, and with reference to the instrument of plaintiff, was unfit for the use to which it was placed and put;" that the plaintiff could not get connection with the central office and thereby make connection with the residence of Dr.

Rosborough so that plaintiff could notify the said doctor to come and attend his wife in her sickness; that plaintiff tried in this way some thirty minutes or more to reach the residence of the said doctor, and finally abandoned the idea of getting the central office and proceeded on horseback to the home of the said doctor, distant about two miles from his home; that when the plaintiff reached the home of Dr. Rosborough he found the said doctor sick in bed and unable to respond to said call and attend his wife; that plaintiff then tried at the doctor's residence to get connection with the central office, but failed, and from there proceeded to the central office of the defendant to get connection from there with the residence of Dr. Hilliard, and on reaching the central office found all the doors closed and locked, and that he then went to a saloon and there got connection with the central office and telephoned Dr. Hilliard to come immediately to see his wife, explaining her condition; that the said doctor lived two miles from plaintiff's residence; that when plaintiff arrived home he found that his wife had delivered the child, and she was flooding, and died in a few minutes after Dr. Hilliard arrived; that Dr. Hilliard, upon receiving the summons, started immediately and came with all dispatch, and that if the telephone system had been properly constructed and maintained plaintiff would have been able to secure telephone connection with a physician sooner and so saved the life of the deceased. Appellant answered by demurrer, general denial and contributory negligence. The case was tried to a jury, and in accordance with their verdict a judgment was rendered in favor of the children and against C. S. Solomon, Sr. From the judgment appellant has brought the case on appeal, seeking to have the same revised for the errors assigned.

It was substantially shown by the evidence that about 2 a. m. of February 5, 1906, Mrs. Solomon was taken violently sick in childbirth, and that her husband tried to call the family physician over the telephone of appellant in which he had a rental interest, but could not get connection with the central office because the telephone was out of order, due to the negligent condition of the ground-wire. Solomon then got on his horse and went to the house of the family physician, the one he had been trying to get over the telephone, and found him sick and unable to go. He then tried to get the central office from this physician's house to get another doctor, but could not get central from there. He then went to the central office, found it locked, and tried to get in but could not. He then went to a near-by telephone, called central, and summoned another physician, who went to the house but got there too late to save Mrs. Solomon's life. She had given birth to a child and died from hemorrhage of the womb, which might have been stopped if a doctor had arrived sooner. The doctor testified that she was in a dying condition when he arrived, and "if I had been there a few minutes after the birth of the child, in my opinion I could have saved the woman's life."

*After stating the case.*—We think the controlling question of the case is presented by the several assignments of error complaining of the action of the court in overruling the demurrer to the petition.

The statute under which this suit is brought provides that an action for actual damages may be brought when the death of any person is caused by the wrongful act, negligence, unskilfulness or default of another. By further terms of the statute the liability in such cases is declared to depend upon the condition that the act complained of "be of such a character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury." The petition does not charge that the injury causing the death was from any violence to the person of the deceased. As can be seen, the petition predicates the right of appellees to recover upon the claim of a general contract with appellant for general telephone service over its system in the city of Marshall, which service they did not get at the particular time in question because of negligent maintenance and equipment of the telephone apparatus, and on account of such failure to get telephone service at the particular time in question failed to get a doctor in time to attend the deceased, who at the time was violently sick in childbirth, and who died from flooding or hemorrhage in giving the birth, which might have been stopped if a physician had arrived sooner than he did to attend her in the delivery of the child. The contract for the telephone service was made August 1, 1902, and was for no specified time, but continued generally, and to the death of the deceased on February 5, 1906. There was no specific contract with the appellant by which it agreed to transmit or to furnish facilities for transmitting this particular message to the physician expected to be called by appellee to attend the deceased in her confinement. The contract made between the husband and the appellant for general telephone service is therefore to be considered as the basis of this action. By the condition imposed by the statute must the right of the appellees to maintain an action against the appellant be determined? The inquiry is, Had the deceased lived, could she have maintained an action against the appellant in the circumstances stated in' the petition, for damages for the injury? The act complained of is the negligent failure to give telephone service under a general contract to do so. To have entitled the deceased to maintain an action for the negligence in the performance of the duty founded on a contract which raised the duty, no personal injury to the person or injury to her property being shown, it must appear that the contract was made by her or was made to inure in fact to her benefit. It may be conceded as a reasonable construction of the contract set up in the petition in this case, that the contract as to general service of the telephone for the use of all of the family of the husband was made at the time to inure in fact for the benefit of the wife. In such action, had she lived, it would have appeared in the circumstances that her damage was the mental anxiety occasioned to her from the delay in procuring a physician's attendance upon her in her then natural sickness of childbirth. Could she recover such damages in the circumstances? The measure of her recovery must, we think, be determined by the general rule of law which applies to all cases of breach of contract, which rule is thus expressed in the case of Western U. Tel. Co. v. Edmondson, 91 Texas, 209, 42 S. W., 549: "When two parties have made a contract, which one of them has broken, the damages which

the other ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered as arising naturally, that is, according to the usual .course of things, from such breach of the contract itself, or as may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract, as the probable result of the breach of it." Tested by this rule, we think the damages in the circumstances are too remote and are not such as both parties would reasonably have understood and contemplated as likely to result from the breach of the contract or the negligence of the company. If there had been a specific contract with the telephone company by which it had agreed to transmit or to furnish facilities for transmitting this particular message to the physician, or if the object and purpose of the deceased in having the physician summoned over the telephone to immediately attend her was previously made known in proper time to appellant under the general contract of telephone service, then we may have found some analogy between this case and the various telegraph cases where telegraph companies have been held responsible for such damages for failure to promptly transmit and deliver the message. But here the unusual situation and condition of the deceased was not known to the appellant, and it had no notice or previous notice of the importance or urgency of a communication to a physician and his summons to come at the time to attend her. Considered, therefore, from the standpoint of the appellant company, there was nothing to indicate, at the time or previous to the time, that she was sick in childbirth and that she had no physician present and could not get one near at hand and could only get one by summoning him two miles away, and that when summoned he would be sick in bed and unable to attend, and that another physician a mile further distant would have to be gotten in his place, and that the deceased would suffer anxiety and suspense because of the fact that a physician failed to reach her sooner than he did. Such suspense and anxiety could not fairly and reasonably be considered in the circumstances as arising naturally and in the usual course of things from the failure of general telephone service, in the absence of notice to appellant of the object and purpose of the deceased in having the physician summoned to come and attend her. Her sickness necessarily caused her to feel some anxiety, and the delay of the physician in coming to attend her would naturally add increased suspense and anxiety. But "some kind of unpleasant emotion in the mind of the injured party is probably the result of a breach of the contract in most cases; but the cases are rare in which such emotion can be held an element of the damages resulting from the breach. For injury to the feelings in such cases the courts can not give redress. Any other rule would result in intolerable litigation." Rowell v. Western U. Tel. Co., 75 Texas, 26, 12 S. W., 534.

It is argued by appellee that where the apparatus is installed in a house the contract for telephone service is to keep the system in working order, so that when one subscriber wants to transact any business with another subscriber to the system the company will put the party wanted to the telephone and make such connections so that the two can transact the business they desire by talking over or through the

telephone, and that the contract does not contemplate that the company is to have notice of the nature of the conversation or business. Even so, the contract is one of lease of the instrumentalities, and not of indemnity against any and all loss or damage that might result to or befall the renter of the instrumentalities from failure to get proper telephone service. As a necessary deduction from the rule of law that damages are recoverable only if they flow from the breach in the natural course of events or within the contemplation of the parties, it follows that damages so remote as to fall without these rules can not be recovered. It would be without warrant of law, and would work injustice, to rule that where a party to a contract is not advised of a special course of circumstances he would be liable for the damages which follow breach by reason of such special course. If such damages could be allowable in the instant case, then with as much reason and force could it be claimed by such rule that a cattle dealer could recover the market decline in value of his cattle because he failed to get telephone service with his agent in the town to instruct him to sell at a particular hour, or where a sheriff having a telephone contract failed to get telephone service with another subscribing officer to instruct arrest of a person accused of crime, and thereby lost a reward for the capture. Many other instances of business delay arising could be mentioned where the damages are remote. As was said by Justice Brown, speaking for the court, in the case of Telegraph Co. v. Edmondson, supra, "and we have neither authority nor inclination to extend the right of recovery in this class of cases (meaning recovery for mental anguish alone) beyond the limits already fixed by the decisions of this court."

It follows from this discussion that the deceased, had she lived, could not have maintained an action for the injury claimed. Unless she could maintain the suit under the condition of the statute the appellees can not maintain the one brought by them. If the damages in the one instance were too remote, then the death of the deceased was not the natural and probable consequence of any negligence on the part of appellant and could not have been foreseen in the light of the circumstances. In the case of Sheffer v. Railway Co., 105 U. S., 251, where a man was hurt by the negligence of the railway company, so that he became mentally deranged and committed suicide, it was held that the negligence of the company in causing the injury was not the proximate cause of the death. In Western U. Tel. Co. v. Cooper, 71 Texas, 507, 9 S. W., 598, a telegram was sent to a doctor to come to see Mrs. Cooper, who was sick in childbirth. The defendant had full notice of the arrangement to have Dr. Keating with Mrs. Cooper during confinement. The telegram was not delivered. Among other elements of damage it was alleged the life of the child was lost. It was held that the death of the child, the bereavement of the parents and their grief for its loss could not be considered as an element of damages because too remote. In International & G. N. Ry. Co. v. Addison, 100 Texas, 241, it was held that the failure of the defendant company to stop its train at a station was not the proximate cause of plaintiff's physical suffering in traveling overland to his destination, because the damages that he suffered were

too remote and could not have been anticipated by the company. In Pullman Car Co. v. McDonald, 2 Texas Civ. App., 322, a passenger was ejected for failure to pay fare, and he claimed mental distress suffered for fear that the delay in the trip would cause his discharge from his employment. It was held that in the absence of knowledge of the facts causing the distress at the time of the contract such damages were not within the contemplation of the parties when a ticket was purchased. We are of the opinion that to overrule the demurrer in this case, and allow the action to be maintained, would be to make an exception to well settled legal principles not warranted by any precedents we have found. This ruling disposes of the appeal.

As it appears unlikely from the case that a cause of action which could be sustained can be averred, the judgment will be here reversed and rendered for the appellant company, with all costs against the appellees herein.

*Reversed and rendered.*

Writ of error refused.